**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Dana Louise Lyons, | ) | Case No.: 6:11-bk-04299-ABB |
| | ) | |
| Debtor. | ) | |
| | ) | |
| John Lyons, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ADV. No.: 11-ap-00067-BGC |
| | ) | |
| Dana Louise Lyons, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.  Background**

**A.  Main Case**

The Debtor filed a Chapter 7 petition in this Court on March 28, 2011.  Case Docket No. 1. The Chapter 7 trustee filed a "No Asset Report" on April 26, 2011. Case Docket No. 12. The debtor filed a Notice of Conversion to Chapter 13 on July 6, 2011. Case Docket No. 15. An Order Converting Case from Chapter 7 to Chapter 13 was entered on July 8, 2011. Case Docket No. 16. The debtor's proposed Chapter 13 plan was confirmed on December 19, 2011. Order Confirming Chapter 13 Plan, Case Docket No. 45.

**B.  Adversary Proceeding**

The plaintiff filed the pending Complaint to Determine Nondischargeability of Obligation on April 19, 2011. A.P. Docket No. 1. In that complaint, the plaintiff contended that the debtor owes him a debt associated with their former "marital home," which debt is not dischargeable pursuant to section 523(a)(15) of the Bankruptcy Code.

**C.  Pending Matters**

The specific matters before the Court are two filed in the adversary proceeding. They are:

1.      The <u>Motion for Summary Judgment</u> filed on September 13, 2011, by the debtor-defendant Dana Louise Lyons, A.P. Docket No. 19; and

2.      The <u>Plaintiff's Cross-Motion for Summary Judgment</u> filed on September 19, 2011, A.P. Docket No. 22

After notice, a hearing was held on September 21, 2011.  Mr. William E. Reed, the attorney for the plaintiff, and Mr. Paul L. Urich, the attorney for the defendant, appeared.

The matters were submitted on the motions with exhibits, the records in the debtor's Chapter 7 and Chapter 13 cases, the record in the pending adversary proceeding, and arguments of counsel.

As discussed below, the Court finds that the sole issue raised by the plaintiff in his complaint is not ripe for adjudication. Consequently, the complaint must be dismissed.

## II.  Findings of Facts

### A.  The Parties' Divorce

The plaintiff and defendant were divorced on February 4, 2011.  The divorce decree incorporated an agreement the parties made named, "Mediated Settlement Agreement and Parenting Plan." <u>Complaint to Determine Nondischargeability of Obligation</u>, A.P. Docket No. 1, Exhibit 1, Pages 1-17.

In summary, the majority of the agreement:

1.      provides for joint custody of the parties' minor son;
2.      specifies when each parent is entitled to physical possession of the child;
3.      designates the rights of the child and the obligations and duties of the parents under the joint custody arrangement;
4.      requires the plaintiff to pay $1,200 monthly child support to the defendant;
5.      requires the plaintiff to pay for the child's day care;
6.      requires the defendant to maintain health insurance for the child;
7.      obligates each party to pay a specified share of the child's health care expenses not covered by insurance;
8.      provides that each party will retain his and her retirement plans and have no claim on that of the other;
9.      grants each party sole ownership of a specifically designated automobile and requires each party to assume and pay any outstanding indebtedness secured by that automobile and to indemnify and hold harmless the other party with respect to that indebtedness;

2

10.   grants each party sole ownership of any personal property in his or her possession with the exception of certain specifically designated items which the plaintiff was given the right to retrieve;

11.   requires each party to be solely responsible for paying debts incurred in his or her name alone;

12.   represents that the parties do not owe any debts that they incurred jointly except for the mortgage on their home;

13.   requires each party to refrain from incurring any future debt in the name of the other; and,

14.   requires the plaintiff to pay $5,750 directly to the defendant's attorney.

In addition to the above, the parties specifically waived any right either would have had to receive alimony from the other pursuant to § 61.08, Fla. Stat. (2009), the exclusive vehicle for requiring one spouse to pay support to the other through a divorce in the state of Florida. In that regard, the agreement provides:

> Each party waives the right to receive alimony of any form from the other both prospectively and retroactively.  This includes but is not limited to; Permanent Periodic Alimony; Durational Alimony; Rehabilitative Alimony; Lump Sum Alimony; Fixed and Non-Modifiable Alimony; Bridge the Gap Alimony; and Temporary Alimony.  By signing this agreement, each party understands that they are forever barred from ever seeking to obtain alimony of any form from the other in the future irrespective of whether or not there is hereafter a need for alimony, an ability to pay alimony, or a substantial change in circumstances.

Complaint to Determine Nondischargeability of Obligation, A.P. Docket No. 1, Exhibit 1, Page 16.

And finally, in regard to the marital residence, the agreement provides:

> The Husband and Wife jointly own real property and a home situated thereon which shall hereafter be referred to as the "Marital Home."  The parties acknowledge that the mortgage on the marital home is delinquent and that the Wife is presently occupying the marital home. The Wife shall have temporary exclusive use and possession of the marital home until such time as the marital home is refinanced, modified, sold, or foreclosed upon. It is acknowledged that the Wife has an interest in retaining the marital home so long as she is able to modify the mortgage to terms that are acceptable to her.  The Husband shall cooperate with the Wife in this regard.  If Wife is able to refinance, modify the mortgage or otherwise save the home from foreclosure, then the home shall be hers, free from any claim from Husband.  Husband shall deliver to Wife a fully executed original Quit Claim Deed at Wife's request to transfer any and all right, title and interest to Wife that he has in the

3

property.  <u>It is specifically understood and agreed that the Husband need
not hereafter contribute to the mortgage or the expenses of the marital
home</u>.  So long as the Wife occupies the marital home, it is agreed that
the Wife shall be responsible for the utilities, and ordinary maintenance in
connection with the marital home and the Wife agrees to indemnify and
hold the Husband harmless from same.  Wife shall be entitled to claim
any tax benefits associated with the property.  Husband specifically
waives any interest he has in and to any escrow and other household
accounts associated with the property.

<u>Id</u>. at Page 14 (emphasis added).

## B.  The Plaintiff's Contention

The plaintiff filed the pending <u>Complaint to Determine Nondischargeability of
Obligation</u> on April 19, 2011. A.P. Docket No. 1. Through it, the plaintiff contends that
the language in the parties' divorce settlement agreement made the defendant solely
responsible for the mortgage debt on their former home and, as between the defendant
and him, that agreement relieved him of any responsibility once the divorce was final.
On that basis, he concludes that under section 523(a)(15) of the Bankruptcy Code the
defendant's obligation to pay the mortgage indebtedness is not dischargeable in the
pending Chapter 13. Subsection 523(a)(15) includes:

A discharge under section... 1328(b)... does not discharge any individual
debtor from any debt – to a spouse, former spouse, or child of the debtor
and **not of the kind described in paragraph (5)** that is incurred by the
debtor in the course of a divorce or separation or in connection with a
separation agreement, divorce decree or other order of a court of record,
or a determination made in accordance with State or territorial law by a
governmental unit;

11 U.S.C. § 523(a)(15) (emphasis added).

## C.  The Debtor-Defendant's Chapter 13 case

The plaintiff filed a claim in this case on August 10, 2011, for $163,201.28. Claim
No. 5.  The filed proof of claim identifies the debt as a "domestic support obligation"
entitled to priority by virtue of 11 U.S.C. § 507(a)(1)(A).[1]  The basis of the claim is the

---

[1] Section 507(a)(1)(A) reads:

(a)      The following expenses and claims have priority in the following order:

(1)      First:

unpaid balance of the mortgage debt on the parties marital residence.[2]

The debtor's Chapter 13 plan did not list the plaintiff, or any other creditor, as a priority claimant.  And it did not list any secured creditors to be paid through the case. It did propose to surrender the parties' marital residence to the secured creditor holding the mortgage on the property.  <u>Chapter 13 Plan</u>, Case Docket No. 26.[3]

The plaintiff objected to confirmation of the defendant's plan because the debtor did not propose to treat his claim as a section 507(a)(1) priority.  <u>Objection to Chapter 13 Plan</u>, Case Docket No. 29.

In response, the debtor objected to the plaintiff's claim arguing that the claim is not a priority claim under section 507(a)(1). <u>Objection to Claim No. 5 of John H. Lyons</u>, Case Docket No. 34.

The defendant's Chapter 13 plan was confirmed on December 19, 2011. <u>Order Confirming Chapter 13 Plan</u>, Case Docket No. 45. Because of the pending adversary proceeding, the confirmation order appropriately reserved a decision on the issue involved in the plaintiff's objection to confirmation and in the defendant's objection to the plaintiff's claim pending resolution of the adversary proceeding. <u>Id</u>.

---

(A)    Allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition in a case under this title, are owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative, without regard to whether the claim is filed by such person or is filed by a governmental unit on behalf of such person, on the condition that funds received under this paragraph by a governmental unit under this title after the date of the filing of the petition shall be applied and distributed in accordance with applicable nonbankruptcy law.

11 U.S.C.A. § 507.

[2] In contrast, the debtor's plan reflects that there are no section 507(a) priority debts. <u>Id</u>.

[3] The secured creditor holding the mortgage on the parties' former home was granted relief from the stay on September 2, 2011.  <u>Order Granting (Ocwen Loan Servicing, LLC) Relief From the Automatic Stay</u>, Case Docket No. 36.

### III.  Conclusions of law

### A.  The Parties' Pleadings and Contentions Create
### an Unsolvable Conflict

The plaintiff filed his "domestic support obligation" claim in the main case with hopes that it would qualify for section 507(a)(1)(A) priority status. In contrast, he filed a section 523(a)(15) - not section 523(a)(5) - complaint contending that this "domestic support obligation" was nondischargeable in this case.  Those positions conflict. As such, this Court is not able to resolve either, as they stand.. A discussion of the relationships of Bankruptcy Code sections 507(a)(1)(A), 523(a)(5), and 523(a)(15) explains why.

Sections 507(a)(1)(A) and 523(a)(5) have a symbiotic relationship. Each is dependant on the other to define "domestic support obligations." Under section 507(a)(1)(A), the only claim that may be afforded priority status is one for "domestic support obligations." Under section 523(a)(5), the only debt that may be found to be nondischargeable is one for "domestic support obligations." Therefore, if a debt is found to be nondischargeable under section 523(a)(5) because it is a "domestic support obligation," it would, by that finding, be entitled to priority status under section 507(a)(1)(A).

This relationship is simple enough to administer; however, the problem arises because of the plaintiff's exclusive reliance on section 523(a)(15) as the basis of his pending adversary proceeding. For a debt to be nondischargeable under section 523(a)(15), it <u>cannot</u> be "of the kind described in," section 523(a)(5), that is, a "domestic support obligation."[4]  Therefore, if this Court were to determine here, based on the plaintiff's complaint, that the defendant's obligation to pay the mortgage debt is nondischargeable under section 523(a)(15), the Court would have to find that the debt was not a "domestic support obligation" under section 523(a)(5). In that event, the plaintiff's claim, which is based on the same debt, would not be a "domestic support obligation" and would not be entitled to priority under section 507(a)(1)(A), which grants priority only to "domestic support obligations."

---

[4] As quoted above, section 523(a)(15) reads:

A discharge under section... 1328(b)... does not discharge any individual debtor from any debt – to a spouse, former spouse, or child of the debtor and **not of the kind described in paragraph (5)** that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit;

11 U.S.C. § 523(a)(15) (emphasis added).

Had the plaintiff made a meaningful reference to section 523(a)(5) in his complaint, this conflict may have been avoided, but he did not.[5] By relying only on section 523(a)(15), the complaint neither describes the debt as a "domestic support obligation" or a support obligation of any nature. The parties did, however, attempt to resolve the conflict after-the-fact.

In her summary judgment motion, the defendant stated, "At the status conference held on August 17, 2011, Plaintiff's counsel offered an alternative theory that the debt was nondischargeable as a domestic support obligation pursuant to 11 U.S.C. 523(a)(5)." Motion for Summary Judgment, A.P. Docket No. 19, Paragraph 3, Page 1. The defendant then made detailed arguments why the debt is not captured by section 523(a)(5) and is dischargeable.

---

[5] In that regard, the plaintiff's complaint reads in full:

COUNT I - DEBTOR INCURRED OBLIGATION BY VIRTUE OF DOMESTIC
RELATIONS DECREE UNDER 11 U.S.C. §  523(a)(15)

17.     Plaintiff incorporated herein by reference each allegation set forth in the
preceding paragraphs and realleges the same as though set out herein
full.

18.     Pursuant to 11 U.S.C. §  523(a)(15), an individual debtor may not be
discharged from any obligation incurred from a domestic relations
decree, including those decrees apart from child support or spousal
support as indicated in § 523(a)(5).

19.     The Defendant has been ordered, by her entry into an agreement, to
retain sole responsibility for the disposition of the marital home, including
mortgage payments, maintenance, and utilities.

20.     By virtue of the same agreement, the Plaintiff has relinquished his rights
to the property in exchange for indemnification by the Defendant.

21.     The Defendant is well able to discharge her own obligation under the
mortgage, but she may not discharge, and Plaintiff would be injured if she
were able to discharge, her obligation to hold the Plaintiff harmless in the
event that the mortgagee pursues him for personal liability.

22.     The Defendant is unable to discharge her responsibilities under the
Mediated Settlement Agreement pursuant to 11 U.S.C. §  523(a)(15).

Complaint to Determine Nondischargeability of Obligation, A.P. Docket No. 1, Pages 3-
4.

In his attempt to resolve the section 523(a)(15) and 523(a)(5) issues in his summary judgment motion, the plaintiff argued that sections 523(a)(5) and 523(a)(15) were so similar that asserting a claim under section 523(a)(15) was the same as asserting a claim under section 523(a)(5). He wrote, "The effect of the implementation of Section 523(a)(15)... renders the difference between domestic support obligations under 523(a)(5) and Section 523(a)(15) immaterial," so that "Even those obligations which are not strictly construed to be domestic support obligations (i.e., alimony and child support) can be treated as nondischargeable, so long as they arise in connection with a marital settlement agreement," and "Because the obligation regarding the mortgage arises out of a marital settlement agreement both Sections 523(a)(5) and 523(a)(15) are equally applicable for purposes of determining dischargeability." Plaintiff's Cross-Motion for Summary Judgment. A.P. Docket No. 22, Paragraphs 11,12, & 14, Page 3.

While these suggestions are tempting, section 523(a)(5) cannot be made a litigable issue in this proceeding as a result of counsel's verbally "offering" a 523(a)(5) "theory" at a status conference. Nor was that accomplished by reference to section 523(a)(5) in the summary judgment motion. That change can be accomplished only by amendment by the plaintiff to his complaint to add a section 523(a)(5) claim pursuant to Rule 7015 of the Federal Rules of Bankruptcy Procedure, which he has not done. The law in this Circuit is this – "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a). A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004). Accord Asociacion de Suscripcion Conjunta del Seguro de Responsabilidad Obligatorio v. Juarbe-Jimenez, 659 F.3d 42, 53 (1st Cir. 2011); Thompkins v. Lil' Joe Records, Inc., 476 F.3d 1294, 1309-1310 (11th Cir. 2007); Hurlbert v. St. Mary's Health Care System, Inc., 439 F.3d 1286, 1296-1297 (11th Cir. 2006); Tucker v. Union of Needletrades, Industrial and Textile Employees, 407 F.3d 784, 788 (6th Cir. 2005).

Consequently, the plaintiff does not have, and has yet to present, a section 523(a)(5) claim in this proceeding upon which summary judgment can be granted, or which, for that matter, can result in entry of a judgment of any nature.

## B.  There Is a Material Difference Between Subsection (5) and Subsection (15)

The plaintiff's contention that the difference between the obligations referred to in sections 523(a)(5) and 523(a)(15) are immaterial is erroneous **in the present context**, that is, in this **Chapter 13** case.[6]

---

[6] In support of his contention that the differences between section 523(a)(15) and section 523(a)(5) are immaterial, the plaintiff cites Ginzl v. Ginzl (In re Ginzl), 430 B.R. 702

First, section 523(a)(5) "domestic support obligations" are nondischargeable in

(Bankr. M.D. Fla. 2010), with which this Court, and many others, agree. The difference in <u>Ginzl</u> and the instant case is that <u>Ginzl</u> was a Chapter 7 case.  Clearly, the Court in <u>Ginzl</u> made that distinction. As the quote below explains, the differences in subsections (15) and (5) in Chapter 13 cases remain.  See <u>In re Johnson</u>, 397 B.R. 289 (Bankr. M.D.N.C.2008) which includes:

> In cases under Chapters 7, 11, and 12 of the Bankruptcy Code, the distinctions between DSOs, governed by Section 523(a)(5), and other types of post-marital obligations, governed by Section 523(a)(15), are immaterial because both types of debts are nondischargeable and must be paid in full. <u>In re Douglas</u>, 369 B.R. 462, 465 (Bankr. E.D. Ark.2007); see 4 Collier on Bankruptcy ¶ 523.02 at 523–15–16. **But in Chapter 13 cases, an important distinction is drawn**. DSOs may not be discharged in a Chapter 13 plan. 11 U.S.C. § 1328(a)(2); 11 U.S.C. § 523(a)(5). However, other post-marital obligations, including property settlements, are dischargeable in Chapter 13. 11 U.S.C. § 1328(a)(2); 11 U.S.C. § 523(a)(15); <u>Douglas</u>, 369 B.R. at 465. If an obligation is deemed a DSO, pursuant to Section 523(a)(5), then the obligation is a priority debt, pursuant to Section 507(a)(1)(A), and the Chapter 13 plan must provide for its full payment, pursuant to *296 Section 1322(a)(2). See, e.g., <u>In re Taylor</u>, No. 07–31055, 2007 WL 1234932 at *2 (Bankr. E.D. Va. Apr. 26, 2007) (2007 WL 1234932). In fact, the discharge will not be granted until the DSO has been paid in full pursuant to Section 1328(a). <u>In re Sanders</u>, 347 B.R. 776, 780 (N.D. Ala. 2006). Therefore, the Court must determine whether Mr. Johnson's obligation to pay the Wachovia Debt is a DSO under Section 523(a)(5).

<u>Id</u>. at 295-96 (emphasis added). Let there be no question that the undersigned agrees with the Court in <u>Ginzl</u> on these points. See 4 Collier On Bankruptcy, ¶ 523.23, at 523-117-18 (15th ed. rev. 2009), the support source for both the statement in <u>Ginzl</u> and the holding here.  It reads:

> As part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, the balancing test governing the dischargeability of debts falling under section 523(a)(15) previously set forth in former subsections (A) and (B) of the provision was deleted.  Section 523 (a)(15) now provides, unqualifiedly, that a property settlement obligation encompassed by section 523(a)(15) is nondischargeable.  Thus, in individual cases under chapters 7 and 11 and in cases under chapter 12, all of which base dischargeability on the subsections of section 523(a), the distinction between a domestic support obligation and other types of obligations arising out of a marital relationship is of no practical consequence in determining the dischargeability of the debt.  However, in chapter 13, debts encompassed by section 523(a)(5) are not dischargeable, while debts encompassed by section 523(a)(15) are dischargeable, unless the debtor obtains a hardship discharge under section 1328(b), in which case a debt encompassed by section 523(a)(15) is nondischargeable.  The distinction between domestic support obligations and other types of marital or family-related debt also remains significant in other contexts under the Code.

<u>Id</u>. (footnotes omitted).

Chapter 13 regardless of the circumstances. They are specifically excluded from both the discharge provided for in 11 U.S.C. § 1328(a), which results from consummation by a debtor of his or her plan, and the "hardship discharge" provided for in 11 U.S.C. § 1328(b).  11 U.S.C. § 1328(c)(2).[7]  In contrast, section 523(a)(15) non-domestic

---

[7] Section 1328 provides:

(a)     Subject to subsection (d), as soon as practicable after completion by the debtor of all payments under the plan, and in the case of a debtor who is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, after such debtor certifies that all amounts payable under such order or such statute that are due on or before the date of the certification (including amounts due before the petition was filed, but only to extent provided for by the plan) have been paid, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt--

(1)     provided for under section 1322(b)(5);

(2)     of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a);

(3)     for restitution, or a criminal fine, included in a sentence on the debtor's conviction of a crime; or

(4)     for restitution, or damages, awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused personal injury to an individual or the death of an individual.

(b)     Subject to subsection (d), at any time after the confirmation of the plan and after notice and a hearing, the court may grant a discharge to a debtor that has not completed payments under the plan only if--

(1)     the debtor's failure to complete such payments is due to circumstances for which the debtor should not justly be held accountable;

(2)     the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 of this title on such date; and

(3)     modification of the plan under section 1329 of this title is not practicable.

(c)     A discharge granted under subsection (b) of this section discharges the debtor from all unsecured debts provided for by the plan or disallowed under section

502 of this title, except any debt--

    (1)    provided for under section 1322(b)(5) of this title; or

    (2)    of a kind specified in section 523(a) of this title.

(d)    Notwithstanding any other provision of this section, a discharge granted under this section does not discharge the debtor from any debt based on an allowed claim filed under section 1305(a)(2) of this title if prior approval by the trustee of the debtor's incurring such debt was practicable and was not obtained.

(e)    On request of a party in interest before one year after a discharge under this section is granted, and after notice and a hearing, the court may revoke such discharge only if--

(1)such discharge was obtained by the debtor through fraud; and

    (2)    the requesting party did not know of such fraud until after such discharge was granted.

(f)    Notwithstanding subsections (a) and (b), the court shall not grant a discharge of all debts provided for in the plan or disallowed under section 502, if the debtor has received a discharge--

    (1)    in a case filed under chapter 7, 11, or 12 of this title during the 4-year period preceding the date of the order for relief under this chapter, or

    (2)    in a case filed under chapter 13 of this title during the 2-year period preceding the date of such order.

(g)    (1)    The court shall not grant a discharge under this section to a debtor unless after filing a petition the debtor has completed an instructional course concerning personal financial management described in section 111.

    (2)    Paragraph (1) shall not apply with respect to a debtor who is a person described in section 109(h)(4) or who resides in a district for which the United States trustee (or the bankruptcy administrator, if any) determines that the approved instructional courses are not adequate to service the additional individuals who would otherwise be required to complete such instructional course by reason of the requirements of paragraph (1).

    (3)    The United States trustee (or the bankruptcy administrator, if any) who makes a determination described in paragraph (2) shall review such determination not later than 1 year after the date of such determination, and not less frequently than annually thereafter.

support obligations are dischargeable in Chapter 13 if the debtor provides for them in his or her plan and makes all of the payments called for by the plan.  11 U.S.C. § 1328(a).

Second, the defendant has provided for the plaintiff's debt in her plan. That plan has been confirmed.  The caveat lies in the plaintiff's pending objection to confirmation which requires, for its success, that his claim be entitled to priority under section 507(a)(1)(A) as a "domestic support obligation." If it is not, but rather is concluded to be a section 523(a)(15) non-domestic support obligation, as he contends it is in his adversary complaint, then it will be discharged if the defendant completes her plan payments.[8]

Third, the question of whether the debt in question is nondischargeable by virtue of section 523(a)(15) is premature. That issue is not ripe for determination because the debt can be nondischargeable only if the defendant fails to make the payments required under her confirmed plan.  If she fails to complete those payments, the plaintiff's debt, if it is a section 523(a)(15) debt, will not be included in or discharged pursuant to the so-called "hardship discharge" provided for in section 1328(b) because section 523(a)(15) debts are explicitly excluded from a "hardship discharge" by 11 U.S.C. § 1328(c)(2), as are all other debts described in 11 U.S.C. § 523(a).  But section 523(a)(15) non-domestic support obligations are not excluded from the operation of the discharge provided for in 1328(a).  So if the defendant makes all of her plan payments, the debt will be discharged if it is a section 523(a)(15) non-domestic support obligation.

Fourth, from a claim standpoint, only section 523(a)(5) "domestic support obligations" are entitled to priority pursuant to section 507(a)(1)(A).  Section 523(a)(15) non-domestic support obligations are neither listed nor accorded a priority of any level

-------

(h)    The court may not grant a discharge under this chapter unless the court after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge finds that there is no reasonable cause to believe that--

(1)    section 522(q)(1) may be applicable to the debtor; and

(2)    there is pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B).

11 U.S.C.A. § 1328.

[8] Moreover, as discussed above, a determination in this proceeding that the debt is a 523(a)(15) non-domestic support obligation would, contrary to the plaintiff's design, foreclose and preclude a determination that the debt is a "domestic support obligation" entitled to priority by virtue of 11 U.S.C. § 507(a)(1).

in section 507(a).  Therefore, the plaintiff's claim must only be paid in full as a prerequisite to confirmation of the defendant's plan if it is a section 523(a)(5) "domestic support obligation."  11 U.S.C. §§ 1322(a)(2) and 1325(a)(1).

Only time will tell if the defendant makes all of her plan payments.  And, assuming <u>arguendo</u> that the debt she owes to the plaintiff is a section 523(a)(15) non-domestic support obligation, the question of whether that debt is nondischargeable <u>vel non</u> hinges exclusively on the circumstance of whether or not she completes her plan payments. That circumstance creates a jurisdictional issue this Court cannot ignore.

## C.  Subject Matter Jurisdiction and Dismissal

This Court remarked early in this opinion that the parties' pleadings and contentions created an unsolvable conflict.  As discussed above, the question of whether the debt in question is nondischargeable by virtue of section 523(a)(15) is premature. That issue is not ripe for determination because the debt can be nondischargeable only if the defendant fails to make the payments required under her confirmed plan.  Until the debtor completes her Chapter 13 plan payments, the question of whether or not her debt to the plaintiff is dischargeable cannot be answered. Therefore, that issue is not ripe for adjudication and does not present a judicable issue which this Court can decide.[9] As the discussion below demonstrates, without ripeness, this Court cannot continue to adjudicate this matter.

The Court of Appeals for the Eleventh Circuit has long recognized, "Article III of the Constitution limits the jurisdiction of federal courts to 'cases' and 'controversies.' " <u>Christian Coalition of Florida, Inc., v. United States</u>, 662 F.3d 1182, 1189 (11th Cir. 2011)(quoting <u>Socialist Workers Party v. Leahy</u>, 145 F.3d 1240, 1244 (11th Cir.1998). "[S]tanding and ripeness originate from the Constitution's Article III requirement that the jurisdiction of the federal courts be limited to actual cases and controversies. <u>Elend v. Basham</u>, 471 F.3d 1199, 1204-1205 (11th Cir. 2006).  They, "present the threshold jurisdictional question of whether a court may consider the merits of a dispute." <u>Id.</u> at 1204.  "Ripeness is an issue of subject matter jurisdiction...."  <u>Bauknight v. Monroe</u>

---

[9] <u>Rubarts v. First Gibraltar Bank (In re Rubarts)</u>, 896 F.2d 107, 109 (5th Cir. 1990); <u>Pa. Dep't of Pub. Welfare v. Johnson–Allen (In re Johnson–Allen)</u>, 871 F.2d 421, 423 (3rd Cir.1989); <u>State v. Heincy (In re Heincy)</u>, 858 F. 2d 548, 550 (9th Cir. 1988); <u>Textron Financial Corp. v. Hadley (In re Hadley)</u>, 2011 WL 3664746, *13 (Bankr. E.D. Va., Aug. 19, 2011); <u>Eric D. Fein, P.C. & Assoc. v. Young (In re Young)</u>, 425 B.R. 811, 815 (Bankr. E.D. Tex. 2010); <u>Automotive Finance Corp. v. Smith (In re Smith)</u>, 2009 WL 4800159, *1 (Bankr. E.D.N.C., Dec. 8, 2009); <u>Ambassadors Travel Services, Inc. v. Liescheidt (In re Liescheidt)</u>, 404 B.R. 499, 504 (Bankr. C.D.Ill. 2009); <u>Catmull v. Vierra (In re Vierra)</u>, 2008 WL 695027, *3-4 (Bankr. D. Idaho, March 12, 2008); <u>In re Auld</u>, 187 B.R. 351, 353 (Bankr. D. Kan. 1995); <u>Oseen v. Walker (In re Oseen)</u>, 133 B.R. 527, 530 (Bankr. D. Idaho 1991); <u>Everett C. Turner Realtors v. Carroll (In re Carroll)</u>, 61 B.R. 178, 179 (Bankr. D. Or. 1986).

County, Fla., 446 F.3d 1327, 1331 (11th Cir. 2006).  It, "goes to whether [a] district court ha[s] subject matter jurisdiction to hear [a] case."  Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1574 n.7 (11th Cir. 1989) (parentheticals added).  A federal court, therefore, lacks subject matter jurisdiction over an unripe claim.  Georgia Advocacy Office, Inc. v. Camp, 172 F.3d 1294, 1299 (11th Cir. 1999). Consequently, an unripe claim must be, "dismissed for lack of jurisdiction."  In re Jacks, 642 F.3d 1323, 1332 (11th Cir. 2011) (citing Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1574 n. 7 (11th Cir.1989) ("[R]ipeness goes to whether the district court had subject matter jurisdiction to hear the case.")).

        In this situation, the avenue for dismissal is clear. The Eleventh Circuit recognizes, "A federal court has the obligation to review sua sponte whether it has subject matter jurisdiction under Article III's case-or-controversy requirement."  Florida Wildlife Federation, Inc. v. South Florida Water Management Dist., 647 F.3d 1296, 1302 (11th Cir. 2011).  "Indeed, it is well settled that a federal court is obligated to inquire into subject matter jurisdiction sua sponte whenever it may be lacking."  University of South Alabama v. American Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999).  "A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises."  Fitzgerald v. Seaboard System R.R., Inc., 760 F.2d 1249, 1251 (11th Cir. 1985).  And upon finding that it has no subject matter jurisdiction over an action, the court must dismiss it; and do so sua sponte if the parties fail to raise the issue.  "It is incumbent on a court of the United States, whether trial or appellate, to dismiss an action whenever it appears that subject matter jurisdiction is lacking, and the court must do so sua sponte if the parties have not brought the issue to the attention of the court."  Marshall v. Gibson's Products, Inc. of Plano, 584 F.2d 668, 671-672 (5th Cir. 1978).  Because, "once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue."  University of South Alabama v. American Tobacco Co., 168 F.3d at 410.

        Rule 12(h)(3) of the Federal Rules of Civil Procedure, applicable here pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, Fed. R. Bankr. P. 7012(b), provides the vehicle for sua sponte dismissing a claim over which a court lacks subject matter jurisdiction.  National Parks Conservation Ass'n v. Norton, 324 F.3d 1229, 1240 (11th Cir. 2003); Jefferson Fourteenth Associates v. Wometco de Puerto Rico, Inc., 695 F.2d 524, 526 (11th Cir. 1983).  The rule provides, "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."  Fed. R. Civ. P. 12(h)(3).

        The only claim in the plaintiff's complaint is that the debt which he is owed by the defendant is nondischargeable because it is a 523(a)(15) non-domestic support obligation. That claim is not ripe for adjudication.  Consequently, the Court lacks subject matter jurisdiction over it.  Consequently, the plaintiff's complaint must be dismissed pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure. Fed. R. Civ. P.

12(h)(3).[10]  Moreover, having determined that it has no subject matter jurisdiction over the plaintiff's unripe 523(a)(15) claim, the Court is without power or authority to grant or deny either party's summary judgment motion.  <u>National Parks Conservation Ass'n v. Norton</u>, 324 F.3d at 1240.

A separate order will be entered in conformity with this memorandum opinion.

Dated:  February 9, 2012                    /s/Benjamin Cohen_____
                                            BENJAMIN COHEN
                                            United States Bankruptcy Judge

BC:pb

---

[10] Dismissal is without prejudice to the plaintiff's right to reassert that claim in the event the defendant does not make all of the payments required under her Chapter 13 plan and requests a hardship discharge.